# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WILLIAM PAVLOFF,

                Plaintiff,

      v.                                                   CV 07-0625 MCA/WPL

CHRISTINE J. SALAZAR-ARP,

                Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff William Pavloff, an inmate previously in the custody of the Department of Corrections, filed a complaint alleging that prison officials burdened his constitutional and statutory rights.[1] Plaintiff alleges several constitutional and statutory violations arising out of several incidents occurring while he was in the custody of the Department of Corrections.

### BACKGROUND

Plaintiff was sentenced for an unidentified crime on August 22, 2006 and was incarcerated with the New Mexico Corrections Department System on September 12, 2006. (Doc. 16 at 2.) On October 10, 2006, his case worker informed him that he had a "misdemeanor warrant/detainer." (Doc. 1 at 7.) Two days later, Plaintiff was transferred to the Western New Mexico Correctional Facility (WNMCF) and placed at classification level II. (Doc. 1 at 7.) On March 21, 2007, Plaintiff was approved for a Level II lateral transfer and was transferred back to the Central New Mexico

---

[1] Plaintiff's Complaint consists of this Court's Prisoner's Civil Rights Complaint form, which has 6 numbered pages, followed by many unnumbered pages lacking a cohesive order. I have numbered the attached pages sequentially, starting with page 7 and continuing to page 22.  After page 22, the pages appear to be copies of documents submitted to prison officials and their responses to those documents.  I consider these pages to be exhibits to the complaint, and I have numbered them sequentially beginning with page 1.

Correctional Facility (CNMCF). (Doc. 16 at 2.)

Two days after Plaintiff's transfer to CNMCF, the classification officer discovered a "felony warrant/detainer lodg[ed] against" Plaintiff in 1988. (Doc. 1 at 7.) Plaintiff, as a result of this felony detainer, was moved to a Level III classification. (Doc. 16 at 2.) Plaintiff's removal to a Level III classification appears to have deprived him of his lump sum good-time credits and his good-time credits, as well as work and school opportunities.

On April 10, 2007, Plaintiff was moved from CNMCF to the Lea County Correctional Facility. (Doc. 16 Ex. 1.) Plaintiff remained in the Lea County facility for two days before being returned to CNMCF. (Doc. 1 Ex. 1.) Twice following his return to CNMCF, Plaintiff was placed in an Interim Level VI placement. According to Defendant's *Martinez* report, Interim Level VI placement "is a temporary placement of the inmate in the segregation unit by the shift supervisor or unit manager based on inmate meeting the criteria of the Level VI placement criteria including threat to security of the institution and protection needs." (Doc. 16 Ex. 7.) Plaintiff was released from CNMCF on February 2, 2008. (Doc. 16 Ex. 1.)

## DISCUSSION

Plaintiff's Complaint raises several claims seeking relief under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must establish the loss of a "right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). To survive dismissal, a complaint alleging a claim under section 1983 must "contain specific allegations of fact indicating a deprivation of constitutional" or statutory rights. *Peterson v. Tomaselli*, 02 Civ. 6325, 2003 U.S. Dist. LEXIS 17006, at *11-12 (S.D.N.Y. Sept. 25, 2003) (unpublished). Under the Prison Litigation

Reform Act of 1996, a court may dismiss a complaint if the court determines that the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

Plaintiff's *pro se* Complaint raises several claims under 42 U.S.C. § 1983 against Classification Officer Christine J. Salazar-Arp. Liberally construed, Plaintiff, in his Complaint, contends that the misdemeanor and felony detainers, his transfer between prison facilities, and his placement in administrative segregation raise claims under the following constitutional and statutory provisions: 1) the Interstate Agreement on Detainers Act (IADA); 2) the Due Process Clause; 3) the Sixth Amendment; 4) the right to access the courts; 5) retaliation for the exercise of a fundamental right; and 6) the Eighth Amendment.

Because Plaintiff is proceeding *pro se*, I will construe his pleadings liberally. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is not required to fashion a *pro se* litigant's arguments for him where his allegations are conclusory and lack supporting factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall*, 935 F.2d at 1110). A court will generally not consider conclusory or unsupported claims. *See Hall*, 935 F.2d at 1113-14.

### Violation of the Interstate Agreement on Detainers Act

Plaintiff contends that Defendant's actions violated his rights under the IADA. According to Plaintiff, after learning of the outstanding felony detainer lodged against him, he asked Defendant to file, pursuant to prison policy, paperwork necessary to "clear up" his detainer. (Doc. 1 at 9.) Plaintiff alleges that Defendant refused his request and told him that it was not her job to file documents to

resolve the felony detainer. (Doc. 1 at 8.)

The IADA is a congressionally sanctioned interstate compact within the meaning of Article I, Section 10 of the United States Constitution and is thus a federal law for purposes of section 1983. *Carchman v. Nash*, 473 U.S. 716, 719 (1985). The violation of a plaintiff's rights under the IADA "can itself present a cognizable claim under" section 1983. *Carter v. Bruce*, No. 05-3402, 2006 U.S. Dist. LEXIS 25658, at *6-7 (D. Kan. April 27, 2006) (unpublished). The source of Plaintiff's claim for a violation of the IADA appears to be his allegation that Defendant refused his request to obtain legal forms necessary to resolve the felony detainer lodged against him. Plaintiff points out that as a result of the felony detainer, he lost his level status, lost his prison job and continuing education, and was deprived of his due process rights. Such allegations appear sufficient to state a claim that Defendant infringed on Plaintiff's rights under the IADA. *Cf. Szymankiewicz v. Alabama*, No. 88 C 7553, 1988 U.S. Dist. LEXIS 11937, at *4-5 (N.D. Ill. Oct. 24, 1988) (unpublished) (recognizing that a plaintiff may challenge the effects of a detainer without "questioning the underlying legality of the detainer itself," and that to be actionable, "the complaint must show that the restrictions imposed as a result of the detainer deprive plaintiff of some constitutionally protected right").

Defendant's *Martinez* report fails to clarify several matters. First, the *Martinez* report fails to indicate whether the felony detainer lodged against Plaintiff relates to a detainer for an outstanding probation violation charge as opposed to an outstanding criminal charge. Under the Supreme Court's decision in *Carchman v. Nash*, 473 U.S. 716, 725 (1985), "A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Article III" of the IADA. Second, assuming the IADA applies to the felony detainer lodged against Plaintiff, the *Martinez* report fails to clarify

4

whether a favorable resolution of Plaintiff's felony detainer would have permitted Plaintiff's return to his classification status prior to the entry of the felony detainer against him.[2] Without such information, I am unable to resolve whether Plaintiff is entitled to proceed with his claim under section 1983 for Defendant's alleged violation of his rights under the IADA.[3]

### Claims under the Due Process Clause

Plaintiff contends that three separate events give rise to his claims under the Due Process Clause.[4] First, Plaintiff contends that Defendant deprived him of his "lump sum good-time and good-time credits, [and] work/school opportunities" in violation of the Fourteenth Amendment's Due Process Clause. (Doc. 1 at 8.) Second, Plaintiff argues that his transfer from a medical facility to a non-medical facility violated his rights under the Due Process Clause. Third, Plaintiff contends that Defendant's decision to place him in administrative segregation deprived him of a liberty interest protected by the Due Process Clause.

"A due process claim under the Fourteenth Amendment can only be maintained where there

---

[2] Corrections Department policy provides "Felony detainers shall be considered active whether or not the detaining authority indicates that the inmate will be extradited." (Doc. 1 Ex. 19.) This provision does not resolve the question underlying Plaintiff's claim under the IADA. Plaintiff alleges that Defendant prevented him from obtaining legal documents necessary to resolve the felony detainer. One potential resolution of a detainer is the complete dismissal of the legal action giving rise to the detainer. A dismissal of the legal matter underlying a felony detainer poses a situation unlike a state's decision to forego an inmate's extradition.

[3] An action challenging the effects of a detainer appears cognizable under section 1983. "Challenges to conditions of confinement fall under § 1983." *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 100 n.3 (3d Cir. 2008). Challenges to the fact or duration of confinement, in contrast, fall under 28 U.S.C.A. § 2254. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

[4] Plaintiff alleges that Defendant's conduct violated his rights under the Due Process Clause of the Fifth and Fourteenth Amendment. Because Plaintiff's Complaint seeks relief against a state actor, I construe his Complaint as raising a claim solely under the Due Process Clause of the Fourteenth Amendment. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor.").

5

exists a constitutionally cognizable liberty or property interest with which the state has interfered."

*Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). "To plead a due process claim sufficient to

survive a motion to dismiss, a [plaintiff] must allege that: (1) the State has granted inmates, by

regulation or statute, a protected liberty interest with respect to the terms or conditions of

confinement; and (2) the defendants' action creates an 'atypical and significant hardship' with regard

to those terms or conditions of confinement." *Peterson*, 2003 U.S. Dist. LEXIS 17006, at *12-13

(quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)).

### Deprivation of Good-Time Credits and Work and Educational Opportunities

Plaintiff contends that the loss of his good-time credits and work and educational

opportunities deprived him of a liberty interest in violation of the Fourteenth Amendment's Due

Process Clause. Plaintiff alleges that "[t]he existence of the detainer affected conditions of his prison

confinement [sic] in preventing him from being able to continue to complete lump sum programs for

early release." (Doc. 1 at 16.)

### Good-Time Credits

Plaintiff alleges that his loss of good-time credits violated his rights under the Fourteenth

Amendment's Due Process Clause. A claim seeking the restoration of good-time credits is generally

not cognizable under section 1983. *See Edwards v. Balisok*, 520 U.S. 641, 644 (1997) ("[T]he sole

remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas

corpus . . . ."). Similarly, a claim alleging that a prisoner was deprived of his good-time credits

without due process of law is not cognizable under section 1983. *See id.* at 646 (concluding that a

state prisoner's suit brought pursuant to section 1983 challenging the validity of the procedures used

6

to deprive him of good-time credits was not cognizable under section 1983 when it would "necessarily imply the invalidity of the deprivation of his good-time credits"); *Nutter v. Ward*, 173 F. App'x 698, 703 (10th Cir. 2006) (unpublished) (observing that in order to resolve the plaintiff's claim that "prison officials denied him a hearing and notice prior to removing" his good-time credits, "a court would have to determine whether the removal of credits was proper, i.e., whether the defendants misinterpreted prison policy"). Plaintiff's claim alleging that he was deprived of his good-time credits without due process of law, therefore, is not cognizable under section 1983 because resolution of this issue in Plaintiff's favor would necessarily imply the invalidity of Plaintiff's loss of those credits.

Although the loss of good-time credits are generally not cognizable under section 1983, several Circuit Courts have suggested that in light of the Supreme Court's decision in *Spencer v. Kemna*, 523 U.S. 1 (1998), "a prisoner who cannot challenge the validity of his conviction (or . . . a prison disciplinary sanction) by either appeal or postconviction procedure can do so by bringing a civil rights suit for damages under" section 1983. *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999). In *Spencer*, five Justices clarified the scope of the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994) and observed that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy the favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." 523 U.S. at 21. *See Jiron v. City of Lakewood*, 392 F.3d 410, 413 n.1 (10th Cir. 2004) (indicating that under *Spencer*, *Heck* may not be applicable to a plaintiff who is no longer in custody).

Plaintiff was released from the custody of the Department of Corrections on February 2, 2008. (Doc. 18 at 1.) The *Martinez* report does not clarify Plaintiff's current status. Exhibit 1 to the

*Martinez* report provides, under the column labeled "Body Location Description," that Plaintiff is in

"Reg III T OR C." Additionally, Exhibit 1 lists "Dual Supervision" under the column labeled

"Reason." While "Dual Supervision" may be a form of supervised release, I am unable to conclude

whether Plaintiff remains "in custody" for purposes of the federal habeas corpus statutes. *See Olson*

*v. Hart*, 965 F.2d 940, 942-43 (10th Cir. 1992) ("Probationary status is sufficiently 'in custody'

pursuant to section 2254 to permit habeas relief."). Because it remains unclear whether Plaintiff is "in

custody" for purposes of the federal habeas corpus statutes, I need not resolve the question of

whether a plaintiff, previously in custody, may bring an action under section 1983 when the

underlying disciplinary sanction has not been overturned or invalidated through a habeas corpus

petition. *Cf. Johnson v. Freeburn*, 29 F. Supp. 2d 764, 775 (E.D. Mich. 1998) ("In light of *Spencer*,

there is simply not a *Heck/Balisok* issue present when a plaintiff brings a § 1983 claim when he or she

is no longer 'in custody.'").

*Work and Educational Opportunities*

Plaintiff contends that his loss of work and educational opportunities deprived him of a liberty

interest in violation of his rights under the Fourteenth Amendment's Due Process Clause. The mere

loss of an opportunity to earn work and educational opportunities does not create a constitutionally

protected liberty or property interest. *See Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50

(5th Cir. 1995) (concluding that a prisoner's termination from his job and subsequent reassignment

"did not impose an atypical and significant hardship on him in relation to the ordinary incidents of

prison life" where the termination and reassignment did not "'inevitably affect the duration of his

sentence'" (quoting *Sandin*, 515 U.S. at 487)). To trigger the protections of the Due Process Clause,

a plaintiff must demonstrate that a state created a liberty or property interest in prison employment

and educational opportunities and that the deprivation of such opportunities imposed an atypical and significant hardship on the plaintiff in relation to the ordinary incidents of prison life. *See Grady v. Edmonds*, 06-cv-01612, 2007 U.S. Dist. LEXIS 78009, *22 (D. Colo. June 11, 2007) (unpublished) (noting that a state must create a liberty or property interest in prison employment for the loss of that employment to trigger the protections of the Due Process Clause).

I am unable to resolve whether the loss of work and educational opportunities deprived plaintiff of a protected liberty interest. Neither Plaintiff's Complaint, nor the *Martinez* report, provides an indication of the statutory basis, if any, of Plaintiff's employment and educational opportunities. Moreover, neither party discusses whether the loss of such opportunities constitutes an atypical or significant hardship in relation to the ordinary incidents of prison life. Accordingly, I am unable to determine whether Plaintiff is entitled to proceed with his claim that his loss of work and educational opportunities entitles him to relief under section 1983.

*Transfer*

Plaintiff also alleges that his transfer between prison facilities as a result of the felony detainer lodged against him deprived him of a liberty or property interest in violation of the Fourteenth Amendment's Due Process Clause. Plaintiff additionally contends that his transfer from a medical facility to a non-medical facility deprived him of a protected liberty interest in violation of the Due Process clause. The Tenth Circuit has recognized that "the due process clause of the Fourteenth Amendment does not entitle a prisoner to a hearing whenever he is transferred from one prison to another because a prisoner does not have a liberty interest in assignment to any particular prison." *Frazier v. Dubois*, 922 F.2d 560, 561 (10th Cir. 1990) (internal quotation omitted). "Because the Due Process Clause itself does not create a liberty interest in the context of a transfer, [I] must

determine whether state law creates such an interest." *Jordan v. Bowles*, No 96-2169 et al., 1997 U.S. App. LEXIS 26377, at *7 (10th Cir. Sept. 24, 1997) (unpublished). "The New Mexico statutes do not create" a liberty interest in the context of a transfer. *Id.* New Mexico laws pertaining to transfer "amount 'to nothing more than procedural requirements for the management of' state corrections facilities; 'such procedural requirements [] are not designed to confer rights on inmates.'" *Id.* (quoting *Counts v. Newhart*, 951 F. Supp. 579, 584 (E.D. Va. 1996))). Because the mere transfer of a prisoner from one prison facility to another does not trigger a liberty interest protected by either state or federal law, I conclude that Plaintiff has failed to state a claim that his transfer between prison facilities violated his rights under the Fourteenth Amendment's Due Process Clause.[5]

*Administrative Segregation*

Plaintiff contends that his placement in administrative segregation infringed a liberty interest protected by the Fourteenth Amendment's Due Process Clause.[6] *See Payne v. Friel*, No. 07-4121,

---

[5] Although not sufficient to state a claim under the Due Process Clause, Plaintiff's transfer between prison facilities may entitle Plaintiff to relief under other constitutional provisions. The Tenth Circuit recognizes that "'while a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution.'" *Frazier*, 922 F.2d at 561-62 (quoting *Murphy v. Missouri Dep't of Corr.*, 769 F.2d 502, 503 (8th Cir. 1985)). Similarly, an inmate's transfer from a medical facility to a non-medical facility may exhibit deliberate indifference to his medical needs and thus raise a claim under the Eighth Amendment. *See Lighthall v. Vadlamudi*, Civ. No. 9:04-CV-0721, 2006 U.S. Dist. LEXIS 74734, at *49 (N.D.N.Y. Feb. 6, 2006) (unpublished) ("A cause of action for deliberate indifference of medical care brought by a *pro se* prisoner under the Fourteenth and Eighth Amendments will only be construed as a claim pursuant to the Eighth Amendment.").

[6] In the *Martinez* report, Defendant points out that Plaintiff was also placed in administrative segregation on September 12, 2006. Even under a liberal construction of Plaintiff's Complaint, his placement in administrative segregation on September 12, 2006 does not give rise to a claim under the Due Process Clause. As Defendant points out, Plaintiff "was placed voluntarily" in administrative segregation "due to his claim of enemies." (Doc. 16 Ex. 7 at ¶ 7.) In his Response to the *Martinez* report, Plaintiff does not contest this characterization. Accordingly, I conclude that this initial placement in administrative segregation does not give rise to a claim under the Due Process Clause.

10

2008 U.S. App. LEXIS 3837, at *9-10 (10th Cir. Feb. 20, 2008) (unpublished) (noting that when a prisoner contends that his assignment to administrative segregation deprived him of a liberty interest in violation of the Due Process Clause, "the district court must conduct an evidentiary analysis to determine whether the duration of the confinement was itself atypical and significant"). "[T]he due process clause does not protect an inmate from being transferred from one institution to another and placing an inmate into administrative segregation does not 'involve deprivation of a liberty interest independently protected by the Due Process Clause.'" *Clayton v. Ward*, 232 F. App'x 827, 831 (10th Cir. 2007) (unpublished) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)). Rather, a decision to place an inmate in administrative segregation implicates the Due Process Clause only where the confinement presents "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin*, 515 U.S. at 485. "The Supreme Court has held that 'the Due Process Clause of the Fourteenth Amendment does not entitle a state prisoner to a hearing when he is transferred to a prison the conditions of which are substantially less favorable to the prisoner, absent a state law or practice conditioning such transfers on proof of serious misconduct or the occurrence of other events.'" *Clayton*, 232 F. App'x at 831 (internal brackets omitted) (unpublished) (quoting *Meachum v. Fano*, 427 U.S. 215, 216 (1976)).

    According to Defendant's *Martinez* report, Plaintiff was placed in interim Level VI administrative segregation on March 23, 2007 "pending an opening of a general population bed space." (Doc. 16 Ex. 7 at ¶ 7.) The *Martinez* report also provides that on April 12, 2007, Plaintiff was again placed in interim Level VI administrative segregation "pending processing." (Doc. 16 Ex. 7 at ¶ 8.) According to Plaintiff, he spent a total of 33 days in administrative segregation. Plaintiff contends that as a result of his confinement in administrative segregation, he was separated from the

general population, suffered from curtailed freedom of movement, the loss of a prison job and educational opportunities, the deprivation of outdoor exercise activities, and the loss of access to the courts. (Doc. 1 at 8-9.)

While a confinement of 33 days does not appear to constitute the type of atypical and significant hardship sufficient to trigger protection under the Due Process Clause, the Tenth Circuit has cautioned district courts against the precipitous dismissal of complaints alleging that a prisoner's confinement to administrative segregation imposed on the prisoner an atypical and significant hardship. *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002). The Tenth Circuit has observed that a district court, in evaluating whether prison conditions constitute an atypical and significant hardship, must examine the conditions of the prisoner's confinement and evaluate whether the administrative segregation mirrors "'those conditions imposed upon inmates in administrative segregation and protective custody.'" *Id.* at 1225-26 (quoting *Sandin*, 515 U.S. at 486)); *compare Clayton*, 232 F. App'x at 832 (unpublished) (confinement of 26 days to administrative segregation considered to be "a relatively short duration" and, without without more, did not constitute an atypical and significant hardship). Defendant's *Martinez* report provides only that "[a]ll inmates in interim Level VI placement are treated similarly, losing rights and privileges that those inmates not in interim Level VI placement have." (Doc. 16 Ex. 7 at ¶ 11.) The *Martinez* report does not provide an indication of whether the length of Plaintiff's stay in administrative segregation mirrored that of other inmates placed in administrative segregation.[7] Without an ability to evaluate "the typical

---

[7] In my Order to File a *Martinez* Report, I instructed Defendant to include in the *Martinez* report "a description of the conditions and restrictions imposed upon Pavloff while in administrative segregation as compared with other prisoners in administrative segregation and prisoners outside of administrative segregation; and a comparison of the duration of Pavloff's confinement in administrative segregation with that of other prisoners who have been in administrative segregation." (Doc. 14 at 5.) The *Martinez* report prepared

conditions of confinement in [Plaintiff's] prison," I am unable to determine whether Plaintiff's confinement in administrative segregation was atypical or significant. *Gaines*, 292 F.3d at 1226.

## Claim under the Sixth Amendment

Plaintiff alleges that Defendant's conduct violated his right to a speedy trial and his right to be informed of the nature and cause of the charges against him as guaranteed under the Sixth Amendment. The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation . . . ." U.S. CONST. amend. VI. The Supreme Court has "identified four factors to be considered in determining whether [a petitioner's] speedy trial rights have been violated: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his speedy trial right, and (4) prejudice to the defendant caused by the delay." *United States v. Casas*, 425 F.3d 23, 33 (1st Cir. 2005) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)).  Plaintiff's Complaint provides that at some point in his detention he received information that California would not extradite him pursuant to the felony detainer lodged against him. (Doc. 1 at 10.) In light of California's decision to forego pursuit of the felony detainer lodged against him, Plaintiff lacks the ability to satisfy the requirements for a violation of the Sixth Amendment. Accordingly, I conclude that Plaintiff fails to state a claim under the Sixth Amendment.

## Right to Access the Courts

Plaintiff alleges several claims invoking the right to access the courts and his right to access proper legal material. Because each of these claims shares similar legal and factual characteristics, and

by the Department did not comply with either of these requirements.

because Plaintiff fails to identify distinguishing characteristics between the separate claims, I will construe them as raising one claim.[8]

"Denial of access to the courts violates a recognized constitutional right, and conceivably could be the basis of a suit pursuant to 42 U.S.C. § 1983." *Henriksen v. Bentley*, 644 F.2d 852, 854 (10th Cir. 1981). To trigger a violation of the right to access the courts,"a prisoner must allege facts indicating a denial of legal resources and that the denial of such resources hindered his efforts to pursue a nonfrivolous claim." *Montana v. Lampert*, No. 07-8090, 2008 U.S. App. LEXIS 2505, at *7-8 (10th Cir. Feb. 1, 2008) (unpublished). Thus, "[t]o show that defendants violated his constitutional right to access the courts, plaintiff must show actual injury – harm which arises when a claim is lost or rejected on account of defendants' misconduct or when defendants impede plaintiff's efforts to pursue a claim." *Hauschulz v. Bourbon County Bd. of Comm'rs*, No. 04-3475, 2006 U.S. Dist. LEXIS 39511, at *31 (D. Kan. June 14, 2006) (unpublished). As the Supreme Court recognized in *Lewis v. Casey*, 518 U.S. 343, 356 (1996), to state a claim for the denial of access to the courts, a prisoner must show that "an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented."

In his Complaint, Plaintiff contends that Defendant denied him his right to access the courts by: 1) refusing to "mail legal papers to court for final disposition[;]" 2) barring "Plaintiff from obtaining proper legal paper work to file for final disposition, [sic] interstate detainer forms need [sic] to obtain court access[;]" 3) denying him "access to inmate legal assistance[;]" and 4) by denying him "access to criminal information factual record, right to view accuracy [sic] case file records." (Doc.

---

[8] The right to access the courts arises out of several constitutional provisions, including Article 4 of the Constitution, the Fourteenth Amendment, the Petition Clause of the First Amendment, and the Due Process clause. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985).

1 at 14-15.) Although it is difficult to ascertain the precise legal claim Defendant allegedly thwarted by denying Plaintiff access to the courts, a liberal construction of Plaintiff's Complaint indicates that Defendant's actions may have prevented Plaintiff from resolving the felony detainer against him, or filing an action to challenge the duration of his sentence. Pending the resolution of Plaintiff's claim for a violation of the IADA, and without information related to whether the successful resolution of the felony detainer would have permitted Plaintiff's return to the classification level he enjoyed prior to the entry of the felony detainer against him, I am unable to evaluate whether or not Plaintiff has demonstrated actual injury arising out of Defendant's alleged denial of his right to access the courts.

## Retaliation

In the Tenth Circuit, prisoners, though incarcerated, retain fundamental constitutional rights. Prison officials "may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Here, Plaintiff claims that Defendant retaliated against him for filing a grievance and for seeking access to legal material to resolve the outstanding felony detainer lodged against him.

"Prisoners have a constitutional right of access to the courts, and may therefore assert § 1983 claims alleging that prison officials retaliated against them for exercising that right." *DeSpain v. Uphoff*, No. 99-8106, 2000 U.S. App. LEXIS 22348, at *13 (10th Cir. Aug. 30, 2000) (unpublished). "To withstand dismissal, however, plaintiff must plead facts evincing a retaliatory motive." *DeSpain*, 2000 U.S. App. LEXIS 22348, at *13 (unpublished). A prisoner states a cause of action for retaliatory treatment if the complaint alleges "'a chronology of events from which retaliation may be inferred.'" *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999) (quoting *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)).

15

Plaintiff alleges that following the discovery of the felony detainer lodged against him, Defendant retaliated against him by moving him from a prison with a medical facility to one without a medical facility while knowing that Plaintiff was undergoing medical treatment. Plaintiff alleges that the Department transferred him to the Lea County facility in retaliation for his attempt to resolve the felony detainer lodged against him. In his Complaint, Plaintiff alleged that at the time of his transfer to the Lea County facility, he was in "bad health conditions" and during the transfer suffered from pain and dehydration. (Doc. 1 at 9.) Plaintiff's Response to Defendant's *Martinez* report further clarifies that at the time of his transfer Plaintiff was undergoing treatment for HIV/AIDS and Hepatitis C. He was transferred to CNMCF, a medical facility, for the purpose of receiving this treatment. His transfer to the Lea County facility, a non-medical facility, on April 10, appears to have interfered with the treatment he had begun just six days prior to his transfer.

Plaintiff's Complaint sets forth facts sufficient to withstand dismissal of his claim that Defendant retaliated against him by transferring him to the Lea County facility. Liberally construed, Plaintiff's Complaint sets forth "'a chronology of events from which retaliation may be inferred.'" *DeWalt*, 224 F.3d at 618 (quoting *Black*, 22 F.3d at 1399). Plaintiff alleges that he "requested a copy of the DOC policy on Detainers" from Defendant but does not specify when he made this request. Additionally, Plaintiff attaches to his Complaint a document titled Inmate Informal Complaint. (Doc. 1 Ex. 19.) In this document, filed on April 9, 2007, Plaintiff complains that "[e]ven though Los Angeles wishes not to extradite why is classification keeping me in a level III status. [sic]" (Doc. 1 Ex. 19.) It is possible that Plaintiff met with Defendant prior to his filing of this informal complaint. Plaintiff's transfer to the Lea County facility subsequent to his filing of this Complaint provides a factual basis from which, without additional information, an inference could be drawn that Plaintiff's

16

transfer to the Lea County facility was made in retaliation for Plaintiff's filing of the grievance. Moreover, Defendant's *Martinez* report fails to provide any discussion of facts related to Plaintiff's claim that Defendant retaliated against him by transferring him to the Lea County facility. From the allegations set forth in Plaintiff's Complaint, and the lack of factual development in Defendant's *Martinez* report, I am unable to resolve Plaintiff's claim that a retaliatory motive prompted his transfer to the Lea County facility.

**Claim under the Eighth Amendment**

Plaintiff also seeks relief under the Eighth Amendment's prohibition of cruel and unusual punishment. In his Complaint, Plaintiff argues that he "was subject to cruel and unusual punishment" when placed in "super-max" segregation and that he suffered from "major pain dehidration [sic] and no food during the transfer 5 ½ hour [] due to the prison officials [sic] retaliation." (Doc. 1 at 9.) Additionally, Plaintiff contends that his transfer to the Lea County facility interfered with his rehabilitation.

"[P]rison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "The test for a 'deliberate indifference' claim under the Eighth Amendment has 'both an objective and a subjective component.'" *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). Under the objective component of this test, courts must evaluate whether the "harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The subjective component 'is met if a prison official knows

17

of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Sealock*, 218 F.3d at 1209).

Plaintiff's Complaint appears to allege facts sufficient to satisfy the objective component of the test for deliberate indifference. In his Response to Defendant's *Martinez* report, Plaintiff alleges that at the time of his transfer to the Lea County facility he was undergoing treatment for HIV/AIDS and Hepatitis C and that during this transfer he suffered severe side effects from the treatment. Plaintiff alleges that despite severe side effects, he received no medical attention or assistance when he was placed in Level VI classification upon his return to CNMCF from the Lea County facility. As Plaintiff has pointed out, he spent 33 days in administrative segregation. *See Scicluna v. Wells*, 345 F.3d 441, 446-47 (6th Cir. 2003) (concluding that genuine issue of material fact existed regarding whether three-week delay in providing medical care constituted deliberate indifference). Accordingly, I conclude that Plaintiff's allegations are sufficient to meet the objective component of the test for deliberate indifference under the Eighth Amendment. *See Kikumura*, 461 F.3d at 1292 ("Although 'not every twinge of pain suffered as a result of delay in medical care is actionable,' when the pain experienced during the delay is substantial, the prisoner 'sufficiently establishes the objective element of the deliberate indifference test.'" (quoting *Sealock*, 218 F.3d at 1210)).

In addition to satisfying the objective element of the test for deliberate indifference, a plaintiff must also demonstrate that the prison official knew of, and disregarded, the risk to the inmate's health or safety. *Kikumura*, 461 F.3d at 1291. Under this analysis, an official avoids liability "'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837).

18

Importantly, "'inadvertent failure to provide adequate medical care' is not enough, nor does 'a complaint that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment under the Eighth Amendment.'" *Id.* (quoting *Estelle*, 429 U.S. at 105-06).

Plaintiff's Complaint provides little reference to Defendant's knowledge, or lack of knowledge, regarding the risk of harm to Plaintiff as a result of his transfer to a non-medical facility and his detention in administrative segregation without access to medical assistance. Similarly, Defendant's *Martinez* report omits any reference to Defendant's knowledge or lack of knowledge of Plaintiff's medical condition. Defendant's *Martinez* report focuses solely on the knowledge possessed by the transportation officers at the time of Plaintiff's transfer. The *Martinez* report points out, "On the date of Plaintiff's transfer to the Lea County facility, no problems associated with the transfer were noted. Had the Plaintiff articulated any concerns, the concerns would have been noted in the Transportation Log." (Doc. 16 at 2.) The *Martinez* report also indicates that, "The transport log does not note any of the concerns articulated by the inmate Pavloff in his Federal Complaint." (Doc. 16 Ex. 8.) This focus is misplaced. A defendant's liability under section 1983 for the deliberate indifference to an inmate's medical needs hinges on a defendant's knowledge of those medical needs, not on the knowledge possessed by others at the time of the transportation. The purpose of a *Martinez* report is to assist the court in determining whether there is a factual or legal basis for the inmate's claims. Without factual development of Defendant's knowledge of Plaintiff's transfer to the Lea County facility, as well as Defendant's knowledge of Plaintiff's medical needs at that time, I am unable to resolve Plaintiff's claim under the Eighth Amendment.

## CONCLUSION

For the reasons set forth above, I recommend that:

1.    Plaintiff's claims alleging a violation of the Fourteenth Amendment's Due Process

Clause for his transfer between prison facilities be dismissed with prejudice; and

2.    Plaintiff's claim under the Sixth Amendment be dismissed with prejudice.

Additionally, I recommend that Defendant file a *Martinez* report, accompanied by a Motion

for Summary Judgment, addressing the following claims raised in Plaintiff's Complaint:

1.    Plaintiff's claim under the Interstate Agreement on Detainers Act;

2.    Plaintiff's claims alleging that his loss of good-time credits and educational and

employment opportunities as well as his placement in administrative segregation

violated his rights under the the Due Process Clause of the Fourteenth Amendment;

3.    Plaintiff's claim that Defendant deprived him of his right to access the courts;

4.    Plaintiff's claim alleging retaliation; and

5.    Plaintiff's claim alleging a violation of the Eighth Amendment.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy
of these Proposed Findings and Recommended Disposition they may file written objections with the
Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections
with the Clerk of the District Court within the ten-day period if that party wants to have
appellate review of the Proposed Findings and Recommended Disposition. If no objections are
filed, no appellate review will be allowed.**

---

William P. Lynch

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE